## UNITED STATES v. HENDY.

### (Circuit Court, N. D. California. February 6, 1893.)

### No. 10,828.

1. PUBLIC LANDS—TITLES DERIVED FROM STATES—PROCEEDINGS TO CANCEL—PARTIES.

The state of California is not a necessary party to a bill by the United States to recover the possession of certain public lands listed by mistake to that state under 19 St. at Large, p. 267, and by it sold to respondent. Williams v. U. S., 11 Sup. Ct. Rep. 457, 138 U. S. 514, followed.

2. SAME—THE LAND OFFICE—FINDINGS OF FACT.

The listing and certification of certain lands to the state of California under 19 St. at Large, p. 267, is not conclusive upon a federal circuit court as to the findings of fact implied by the approval of the land office, but such court can set it aside for inadvertence or mistake. Williams v. U. S., 11 Sup. Ct. Rep. 457, 138 U. S. 514, followed.

3. SAME—RELIEF OF BONA FIDE PURCHASERS.

A person who, prior to the passage of act March 1, 1877, (19 St. at Large, p. 267,) applied to purchase from the state of California certain lands listed to that state by mistake, but who did not make his first payment thereon until many years after the enactment of such statute, was not entitled to purchase the lands from the United States under the first proviso of section 2 of that act; for this proviso does not include mere applicants to purchase, nor could such person be considered as an innocent purchaser, within the meaning thereof. Durand v. Martin, 7 Sup. Ct. Rep. 587, 120 U. S. 366, applied.

In Equity. Suit by the United States against George Hendy to cancel a listing of certain lands to the state of California, and to estop respondent to assert title thereto. Heard on demurrer to the bill. Overruled.

Chas. A. Shurtleff, Asst. U. S. Atty.
Chas. E. Wilson, for defendant.

McKENNA, Circuit Judge. This is a bill in equity to cancel a listing to the state of California of the N. E. ¼ of section 23, and estop respondent from asserting title thereto under purchase from the state. That the listing of the said N. E. ¼ of section 23 was a mistake, and it is alleged, therefore, to have been void. That the mistake was first discovered by the commissioner of the general land office on the 30th of June, 1883, and he immediately advised the surveyor general of the state thereof, and requested him to notify any purchaser of said land, and that he would be requested to perfect his title under sections 2 and 3 of the provisions of the act of congress of March 1, 1877, (19 St. p. 267,) and upon failure to do so the land would be disposed of in a manner provided by law. That the surveyor general replied that the land had not been sold, and requested the commissioner to cancel the listing, which the commissioner did on the 30th of June, 1883, under provisions of section 2 of said act of March 1, 1877. That one Charles M. Compton, being qualified to make a pre-emption settlement, settled on said land, and afterwards, to wit, on the 22d of July, 1883, filed his declaratory statement in the proper land office, in due form of law, and such proceedings were duly and regularly had that he made his final

proof, and paid the purchase price therefor, and received from the officers of the land office a final certificate for said land, No. 9,677, but no patent has issued therefor. That on the 14th of October, 1876, respondent applied in due form to the surveyor general of the state to purchase said land, and, there being other applicants, the applications were referred by the surveyor general, under the laws of the state, to the proper state court for determination; and said court duly adjudged respondent entitled to purchase said land, in preference to said other applicants. That on July 31, 1885, respondent, acting upon his said application of October 14, 1876, and the said judgment of June 26, 1885, paid to the state 20 per cent. of the purchase money of said land, and that on the 19th of August, 1885, a certificate of purchase was duly issued to him by the registrar of the state land office. That on the 7th of May, 1886, the respondent made application to the proper land office of the United States under the provisions of said act of March 1, 1877, as an innocent purchaser of said land from the state of California, and that said application was refused, the said officers deciding that he was not entitled to purchase said land as an innocent purchaser, or at all, and that the said Compton was entitled to a patent therefor.

Respondent demurs to the bill for want of equity, and that there is a defect of parties respondent, in this: that the legal title to the land is alleged to be in the state of California, which title is sought to be defeated, and that the state is a necessary and indispensable party respondent, and is not and cannot be made a party.

The last ground of demurrer is answered and decided by the case of Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. Rep. 457. In this case certain lands were certified to the state of Nevada under an act of congress. The certification was based on a formal application of the state. After certification the appellant in the case applied to purchase, and a contract was entered into with him to sell him the land; he at the time paying one fifth of the purchase money, the balance to be paid in installments. A bill was filed against the appellant alone, to cancel the contract between him and the state, and to adjudicate that he had no title or interest in the land. The general scope of the allegations of the bill was that the lands were improperly certified to the state; that in equity it had no title, and its contract with appellant conveyed no title or interest to him. A decree was entered by which the title of appellant was divested, and he directed to surrender up to the state for cancellation all contracts or agreements he had with the state for the lands. The supreme court affirmed the decree. The court held that the state of Nevada and the appellant had, respectively, the legal and equitable titles; and to the objection that only one action could be joined to divest these titles, in which both parties should be joined, the court say:

"The proposition is not sound. A court of equity has jurisdiction to divest either one of the adverse holders of his title in a separate action. Doubtless the court has power, when a separate action is instituted against one, to require that the other party be brought into the suit, if it appears necessary to prevent wrong and injury to either party, and to thus fully determine the title

in one action; but such right does not oust the court of jurisdiction of the separate action against either. It has jurisdiction of separate actions against each of the adverse holders, and there is no legal compulsion, as a matter of jurisdictional necessity, to the joinder of both parties as defendants in one action. There are special reasons why this rule should be recognized in this case. It may be that the circuit court would not have jurisdiction of an action against the state; that an action against a state, on behalf of the United States, can be maintainable only in this court; and that, when brought in this court, no other party than the state can be made defendant."

In support of the first ground of demurrer, counsel contends, among other things, that the listing and certification of the land in controversy to the state of California cannot be canceled or set aside by this court, because, in the absence of fraud, the findings of fact implied by the approval of the proper officers of the United States are conclusive, and their decision was final, and has become res adjudicata. Williams v. U. S. is also a complete reply to this:

"The second contention is that the court erred in finding that there was fraud or wrong by which the title was taken away from the general government. The allegations of the bill are of fraud and wrong, but they also show inadvertence and mistake in the certification to the state; and it cannot be doubted that inadvertence and mistake are, equally with fraud and wrong, grounds for judicial interference to divest a title acquired thereby. This is equally true, in transactions between individuals, and in those between the government and its patentee. If, through inadvertence and mistake, a wrong description is placed in a deed by an individual, and property not intended to be conveyed is conveyed, can there be any doubt of the jurisdiction of a court of equity to interfere, and restore to the party the title which he never intended to convey? So of any other inadvertence and mistake, vital in its nature, by which a title is conveyed when it ought not to have been conveyed. The facts and proceedings attending this transfer of title are fully disclosed in the bill. They point to fraud and wrong, and equally to inadvertence and mistake; and if the latter be shown the bill is sustainable, although the former charge against the defendant may not have been fully established."

This leaves only for consideration what right respondent acquired under the act of March 1, 1877. The act is as follows:

"Be it enacted by the senate and house of Representatives of the United States of America, in congress assembled, that the title to the lands certified to the state of California, known as 'Indemnity School Selections,' which lands were selected in lieu of sixteenth and thirty-sixth sections, lying within Mexican grants, of which grants the final survey had not been made at the date of such selection by said state, is hereby confirmed to said state, in lieu of the sixteenth and thirty-sixth sections, for which the selections were made.

"Sec. 2. That where indemnity school selections have been made and certified to said state, and said selections shall fail, by reason of the land in lieu of which they were taken not being included within said final survey of a Mexican grant, or are otherwise defective or invalid, the same are hereby confirmed, and the sixteenth or thirty-sixth section, in lieu of which the selection was made, shall, upon being excluded from such final survey, be disposed of as other public lands of the United States: provided, that if there be no such sixteenth or thirty-sixth section, and the land certified therefor shall be held by an innocent purchaser for a valuable consideration, such purchaser shall be allowed to prove such facts before the proper land office, and shall be allowed to purchase the same at one dollar and twenty-five cents per acre, not to exceed three hundred and twenty acres for any one person: pro-vided, that if such person shall neglect or refuse, after knowledge of such facts, to furnish such proof, and make payment for such land, it shall be subject to the general land laws of the United States.

"Sec. 3. That the foregoing confirmation shall not extend to the lands settled upon by any actual settler claiming the right to enter, not exceeding the

prescribed legal quantity under the homestead or pre-emption laws: provided, that such settlement was made in good faith upon lands not occupied by the settlement or improvement of any other person, and prior to the date of certification of said lands to the state of California by the department of the interior: and provided, further, that the claim of such settler shall be presented to the register and receiver of the district land office, together with the proper proof of his settlement and residence, within twelve months after the passage of this act, under such rules and regulations as may be established by the commissioner of the general land office."

This act has received full interpretation in Durand v. Martin, 120 U. S. 366-375, 7 Sup. Ct. Rep. 587. The court say:

"This statute was, in our opinion, a full and complete ratification by congress, according to its terms, of the lists of indemnity school selections which had been before that time certified to the state of California by the United States as indemnity school selections, no matter how defective or insufficient such certificates might originally have been, if the lands included in the lists were not of the character of any of those mentioned in section 4, and if they had not been taken up in good faith by a homestead or pre-emption settler prior to the date of certificate. * * *"

The respondent claims to be within the first proviso of section 2. As to cases there mentioned the court say:

"* * * In lieu of confirmation, bona fide purchasers from the state were given the privilege of perfecting their titles by paying the United States for the land at a specified price."

Is the respondent a bona fide purchaser from the state? Or, rather, was he a bona fide purchaser from the state at the time of the passage of the act of 1877? It appears to be assumed by counsel that the act had an indefinite future operation, or that a purchase after the act would relate to, and attach itself to, a prior application. But applications to purchase are not saved. It is prior purchases for valuable considerations which are saved; that is, completed purchases. There could be no object in protecting those who had paid nothing, nor can they be held to be described by the term, "innocent purchasers for a valuable consideration."

The demurrer is therefore overruled.